IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE


Civil Case No.  05-cv-00582-LTB


MARGE E. CAMPBELL,

        Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

        Defendant.

_____

### ORDER
_____

Plaintiff, Marge E. Campbell, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying her application for disability insurance benefits, filed

pursuant to 42 U.S.C. §§ 401-433.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral

argument would not materially assist in the determination of this appeal.  After consideration of

the parties' briefs, as well as the administrative record, I REVERSE and REMAND the SSA

Commissioner's final order for further proceedings.

### I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her application for

disability insurance benefits filed on April 9, 1999.  [Administrative Record ("AR") 226]  The

application was initially denied on June 10, 1999.  [AR 207]   Upon Plaintiff's request, an

Administrative Law Judge ("ALJ") conducted an evidentiary hearing on April 3, 2000.   [AR 30,

218] The ALJ subsequently issued a written ruling on May 25, 2000, denying Plaintiff's

application on the basis that her past relevant work as a proofreader and general office clerk did

not require the performance of work related activities precluded by her residual functional

capacity for a limited range of medium work.  [AR 33, 44]  On May 3, 2002, the SSA Appeals

Council vacated the ALJ's determination, and remanded the case for further administrative

proceedings. [AR 82]

Following a second hearing on March 5, 2003 [AR 887], a different ALJ issued a written

ruling on April 22, 2003, denying Plaintiff's application on the basis that she retained the residual

functional capacity to perform a range of light work and a significant number of jobs existed in the

national economy that would accommodate her limitations (Step Five).  [AR 18, 25]  On March

15, 2005, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's

determination, making the SSA Commissioner's denial final for the purpose of judicial review.

[AR 10]  *See* 20 C.F.R. § 404.981.  Plaintiff timely filed her complaint with this court on March

30, 2005, in which she seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in November of 1951. [AR 226, 892]  She was 46 years old on the date

she claims to have become disabled and 51 years old on the date her disability insured status

expired.  [AR 226, 230]  She has a high school education.  [AR 25, 526, 892]   Her past relevant

work history includes working as a postal clerk, a stock clerk, an office clerk and cleaner, and a

proofreader.  [AR 243, 253, 912]  Plaintiff alleges that she is disabled as of July 25, 1998, due to

fibromyalgia, intercostal neuritis, costochondritis, myofascial dysfunction, and right-sided sciatica.

[AR 252]

The medical records first indicate that Plaintiff went to see a neurologist related to a jaw and teeth injury and, at that time, she complained of chronic headaches, back and neck pain. [AR 722]  She subsequently sought treatment for back and neck pain related to a car accident in 1996. [AR 354, 443, 690]  In connection with this accident, Dr. Eric Ridings performed an independent medical evaluation on October 31, 1996. [AR 587]   Dr. Ridings concluded that Plaintiff had right myofascial low back pain and a resolving cervical strain injury.  He opined that Plaintiff could return to full-time employment if she could change positions frequently and did not repetitively bend or lift more that 25 pounds occasionally and 50 pounds regularly.  [AR 591, 594]   He recommended that Plaintiff participate in a pain clinic program.  [AR 594]

After participating in a pain clinic in early 1997, Plaintiff was discharged with full resolution of neck pain and 50% resolution of her back pain.  [AR 597, 600]   The discharge summary notes indicated that she could sit for 60 minutes and stand for 5-10 minutes, lift 14 pounds to waist level and 12 pounds above her shoulder, and that she should take breaks for pain management every 50 minutes.  [AR 598]  On June 18, 1997, Dr. Karl Hansen concluded that Plaintiff had a 35% whole person  workers' compensation impairment rating due to her spine and right shoulder.  [AR 562, 565]

In April 1997, a physical therapist concluded, in a functional capacity evaluation, that Plaintiff could perform light work 4 hours per day, progressing to 8 hours a day, which allowed: frequent position change; lifting and carrying 20 pounds occasionally and 10 pounds frequently; and occasional bending, stooping, squatting, kneeling, crawling, performing repetitive upper and lower extremity movements on the right, and reaching overhead.  [AR 637, 641] Plaintiff exhibited a few signs of symptom magnification syndrome, but the results of his report were

deemed "valid."  [AR  662]  Plaintiff's treating orthopedic surgeon, Dr. Doug Bagge, used the physical therapist's functional limitations to conclude that Plaintiff was capable of performing her job with some modification.  [AR 733]  Dr. Bagge opined that Plaintiff was capable of working full time as long as she did not lift more than 20 pounds or more than 10 pounds overhead.  [AR 733]  After Dr. Bagge determined that he did not have much more to offer Plaintiff as an orthopedist, he referred her to a rehabilitation specialist.  [AR 346]

As a result, Plaintiff received treatment from Dr. Anthony Chiodo, from February through September of 1998.  [AR 299]   On July 22, 1998, Dr. Chiodo opined that Plaintiff suffered from intermittent pain related to fibromyalgia resulting in a "fluctuating course with regard to her symptoms."  [AR 310, 304, 305]

On July 29, 1998, Dr. Roger Heyl, Plaintiff's family practitioner, states in a letter that Plaintiff  "reported that she is unable to continue working at the NAPA service counter because of chronic neck and back pain, which is aggravated by this type of work."  [AR 441]

On December 31, 1998, after Plaintiff fell and injured herself, Dr. Heyl's impression was acute lumbar strain superimposed on chronic lower back pain and depression.  [AR 369]

On June 9, 1999, Dr. George Twombly, a Disability Determination Services physician, completed a physical residual functional capacity assessment after reviewing Plaintiff's medical records.  [AR 384]  Although the record is apparently missing several pages of the report, he opined that Plaintiff could lift 50 pounds and frequently lift 25 pounds, and she could stand 6 hours in an 8-hour day and sit 6 hours in an 8-hour day with postural shifting and normal breaks.

In August 1999, Plaintiff underwent a second functional capacity evaluation, in which the same physical therapist concluded that Plaintiff could perform "light" work.  [AR 456]  In the "recommendations" section of his evaluation, the physical therapist stated as follows:  "Patient is unable to return to work secondary to her poor lifting tolerance and poor endurance to activity. She has attempted several times to return to gainful employment but needed to stop secondary to increased pain and decreased mental capacity with use of pain medication."  [AR 463]  The functional limitations in the evaluation were that Plaintiff could:  lift 10 pounds frequently and 18-20 pounds occasionally; carry 7 pounds frequently and 13 pounds occasionally; occasionally sit, stand, walk, kneel, crawl, balance, reach with her right upper extremity, and perform fine control and low speed assembly with her hands.  [AR 445]  She also needed to alternate between sitting, standing and walking frequently.  [AR 445]   Dr. Heyl subsequently indicated that he had "no reason not to agree with the limitations set forth in [the] functional capacity evaluation."  [AR 388]

On September 24, 1999, on Dr. Heyl's referral, Plaintiff saw Dr. Catherine Willner, a specialist in neurology and pain.  [AR  744]  Dr. Willner concluded that because Plaintiff exhibited "much more beyond the usual diagnosis of fibromyalgia, . . . [h]er diagnosis best fits with chronic pain syndrome."  [AR 743]  Dr. Willner noted that "[m]y sense of the situation is that [Plaintiff] does not intend to consider returning to work with any physical requirements."  [AR 743]  On November 16, 1999, Dr. Willner confirmed her diagnosis, reiterated that Plaintiff did not have fibromyalgia, and noted that "[t]here may be issues of secondary gain here, including her issues related to disability" and "formal pain management in the behavioral sense . . . may be the best there is to offer."  [AR 111]   In December 1999, Plaintiff again saw Dr. Willner and indicated

5

that she was not interested in medications, but the "accuracy of the diagnosis" in anticipation of

upcoming "hearings."  Dr. Willner again diagnosed chronic pain syndrome. [AR 110]

Plaintiff  followed up with Dr. Heyl for depression related to pain and inability to work.

[AR 742]  She continued to see him through August of 2000 for complaints of pain related to

fibromyalgia, management of her medications, and shoulder pain associated with a fall.  [AR 742,

753, 153, 122, 130]  On April 19, 2001, Plaintiff began seeing Heyl's associate, Dr. Carolyn

Johnson, for left leg pain.  [AR 139]  Dr. Johnson concluded that Plaintiff had trochanteric

bursitis of the left hip, fibromyalgia, and a bruised left knee.  [AR 148]  In September 2001, in

conjunction with her treatment for scalp problems and fever blisters, Dr. Heyl reported that

Plaintiff's fibromyalgia was "doing well" on medication.  [AR 143, 142-45]

In December 2001, Plaintiff saw Dr. Johnson for back pain, which was diagnosed as

arthritis in her lower back.  [AR 141]  When Plaintiff saw Dr. Johnson in January of 2002, the low

back pain had resolved with medication.  [AR 140]  Plaintiff saw Dr. Johnson for a physical in

February 2002, and reported right back pain and right arm numbness.  [AR 183]  Despite

numerous visits after that, no significant findings were made. [AR 163-181]

Based on a previous diagnosis of thoracic outlet syndrome, Plaintiff was referred to Dr.

Mark Stern for evaluation for upper extremity pain on March 28, 2002 after her cervical MRI was

normal.  [AR 179, 206]  Dr. Stern found good strength in both upper extremities and thus

concluded that Plaintiff had a low probability of thoracic outlet syndrome. [AR 206]

Plaintiff continued to see Dr. Johnson for treatment of symptoms she related to

fibromyalgia, including numbness in her feet which Dr. Johnson assessed as peripheral

neuropathy, and a rash on her right scalp and arm which Dr. Johnson assessed as possible

dermatomyositis or lump erythematous. [AR 179, 172, 161, 167, 165 ]  Dr. Johnson referred

Plaintiff to Dr. Suzanne Gray, a rheumatologist, who saw Plaintiff on January 27, 2003.  [AR

156]  Dr. Gray found full active and passive range of motion of the spine and joints without

tenderness, with the exception of possible early arthritis of her hands. [AR 158-59]   She

concluded that the rash was probably "sun related." [AR 159]

## II. LAW

A five-step sequential evaluation process is used to determine whether a claimant is

disabled, which is generally defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505;

*see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987);

*Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If she

is, disability benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination whether

the claimant has a medically severe impairment or combination of impairments as governed by 20

C.F.R. § 404.1520(c).  If the claimant is unable to show that her medical impairments would have

more than a minimal effect on her ability to do basic work activities, she is not eligible for

disability benefits.  Step Three determines whether the impairment is equivalent to one of a

number of listed impairments deemed to be so severe as to preclude substantial gainful

employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, she is not presumed to

be conclusively disabled.  Step Four then requires the claimant to show that the impairment(s) and

assessed residual functional capacity ("RFC") prevents her from performing work that she has

performed in the past.  If the claimant is able to perform her previous work, the claimant is not

disabled.  *See* 20 C.F.R. § 404.1520(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps

discussed, the analysis proceeds to Step Five where the Secretary has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of her age,

education and work experience.  20 C.F.R. § 404.1520(g).  The claimant is entitled to benefits if

the Secretary cannot establish that she can perform an alternative work activity and that this type

of job exists in the national economy.  The Secretary may rely upon the Medical Vocational

Guidelines (the "grids") to meet this burden.  *Bowen v. Yuckert, supra*, 482 U.S. at 146.

### IV.  RULING

After a second hearing and re-evaluation of the evidence as required by the SSA Appeal

Council remand, the ALJ here concluded that Plaintiff was not disabled.  [AR 25]  The ALJ first

determined that there was no evidence that Plaintiff had engaged in any substantial gainful activity

during the relevant period under review (Step One).  [AR 22]  The ALJ next found that Plaintiff

had presented medically acceptable evidence of chronic pain syndrome which he determined was a

"severe" impairment (Step Two).  [AR 22]  Because Plaintiff's has had no impairment or

combination of impairment of such severity as to medically meet or equal any condition deemed

to be so severe as to preclude substantial gainful employment (Step Three), the ALJ went on to

determine whether Plaintiff retained the RFC to perform the requirements of her past relevant

work (Step Four).  [AR 22]

After reviewing Plaintiff's medical records and the her credibility as to her symptoms and functional limitations, the ALJ found that Plaintiff retained the RFC for light extertional work with additional limits as follows: "occasional overhead reaching, occasional bending or stooping, no squatting, no prolonged manipulation, and accommodating a mildly limited capacity for attention and concentration." [AR 22]  The ALJ noted that the additional limitations imposed "are given primarily as prophylactic measures designed to accommodate the claimant's subjective complaints even though minimal evidence supports the contention that she would [be] physically limited by such complaints." [AR 22-23]  Given this RFC assessment, the ALJ determined that Plaintiff was unable to return to any of her past relevant work (Step Four).  [AR 24]

As a result, the ALJ determined that the burden of proof then shifted to the Commissioner to show that other jobs exist in significant numbers that Plaintiff could perform given her age, education, work experience and RFC (Step Five).  [AR 25]   The ALJ found, based on the testimony of a vocational expert, that such jobs existed in a significant number and, thus, the Commissioner met her burden. [AR 25]  As a result, the ALJ concluded that Plaintiff was not disabled under the standards of the Social Security Act at any time through April 22, 2003, the date of his decision.  [AR 25]

On appeal of the ALJ's decision, the SSA Appeals Council found no reason to review the ALJ's decision and, thus, denied Plaintiff's request for review, making the ALJ's decision final. [AR 10]   This appeal followed.

## V. STANDARD OF REVIEW

The function of my review is limited to determining whether the correct legal standards

were applied, and to evaluating whether the factual findings are supported by substantial evidence

in the record as a whole.  *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).   "Substantial

evidence is more than a scintilla, but less than a preponderance; it is such evidence that a

reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, *supra*, 822 F.2d at

1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.  1420, 28 L.Ed.2d 842 (1971)).

I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v.*

*Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*,

811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  I

examine the record as a whole, including whatever in the record fairly detracts from the weight of

the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has

been met.  *Casias v. Secretary of Health & Human Servs.*, *supra*, 933 F.2d at 800 (*citing*

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct.  456, 95 L.Ed. 456 (1951)).

## VI. ANALYSIS

### A.  Plaintiff's Credibility

On appeal, Plaintiff first argues that the ALJ erred when determining her residual

functional capacity ("RFC") at Step Four of the sequential analysis because his findings regarding

her credibility were incomplete and were not supported by substantial evidence.

Social Security Ruling 96-7p mandates that a credibility determination "must contain

specific reasons for the finding on credibility, supported by the evidence in the case record" and

that it be "sufficiently specific" to inform subsequent reviewers of both the weight the ALJ gave

to a claimant's statements and the reasons for that weight.  *See Hayden v. Barnhart*, 374 F.3d

986, 992 (10th Cir. 2004).  The ALJ's findings with respect to a claimant's credibility "should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

Subjective accounts of the severity of the pain must be evaluated with due consideration

of credibility, motivation, and medical evidence of impairment.  *Luna v. Bowen,* 834 F.2d 161,

165-66 (10th Cir.1987).  Other factors the court considers in evaluating whether pain is disabling

are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor,

and daily activities.  *Id.*  The ALJ determines the weight and credibility of testimony, and these

determinations are generally considered binding on the reviewing court.  *Broadbent v. Harris,* 698

F.2d 407, 413 (10th Cir.1983).

The ALJ found that the Plaintiff's "reports and testimony of symptoms and functional

restrictions was not supported by the evidence overall in the disabling degree alleged and lacked

full credibility."  The ALJ based his determination on the fact that:  1) the record reflects that

Plaintiff made multiple complaints for which no objective verification has been found; 2) her

laboratory results have been unremarkable or inconclusive, and results of her x-rays and MRI

were normal; and 3) her clinical examinations have been normal overall, except for her "subjective

descriptions of the problems."  In sum, "[n]o physical validation of [Plaintiff's] complaints has

been found." [AR 22]

In support of this finding, the ALJ also notes that in 1997 the physical therapist found

"evidence of symptom magnification."  Also, Dr. Willner refused to confirm the diagnosis of

11

fibromyalgia, despite pressure from Plaintiff, and stated that it was her sense that Plaintiff "did not intend to consider a return to work with any physical requirements" and opined that "there may be issues of secondary gain including issues related to disability." Finally, the ALJ noted that Plaintiff's rheumatology consultation failed to result in any significant findings regarding inflammatory joint disease and dermatomyositis. [AR 22]

Plaintiff asserts that the ALJ failed to consider all of the requisite factors for evaluating the credibility of her testimony. Plaintiff points to the fact that the ALJ did not specifically address the "substantial efforts" she has undergone to seek and receive medical treatment, her various medications and related side effects, her daily activities, and the "longstanding nature" of her health problems. Plaintiff also attempts to undermine the validity of the evidence relied upon by the ALJ, and instead argues that "there is significant objective evidence supporting the diagnosis of fibromyalgia, as well as myofascial pain syndrome, and/or chronic pain syndrome."

As is usual with subjective claims of pain and related functional limitations, the evidence is susceptible to more than one interpretation. However, it is the province of the ALJ, as the fact finder, to weigh the conflicting evidence. *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)(credibility determinations are for the finder of fact and should not be disturbed when supported by substantial evidence).

Additionally, I reject Plaintiff's assertion that the ALJ's alleged failure to specifically address all the conflicting evidence constitutes error. The ALJ is required to address the "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005)(*quoting Clifton v.*

*Chater*, 79 F.3d 1007, 1009 -1010 (10th Cir. 1996)); *see also Hamlin v. Barnhart*, 365 F.3d

1208, 1219 (10th Cir. 2004)("[t]he ALJ may not pick and choose which aspects of an

*uncontradicted* medical opinion to believe, relying on only those parts favorable to a finding of

nondisability")(emphasis added). However, "[t]he record must demonstrate that the ALJ

considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."

*Id.; Qualls v. Apfel,* 206 F.3d 1368,1372 (10th Cir. 2000)(the ALJ's credibility determination

"does not require a formalistic factor-by-factor recitation of the evidence").  Here, the ALJ's

order, when viewed as a whole, sufficiently addresses the extensive conflicting evidence, including

the evidence that he rejected or chose not to rely on, and the related reasons for his credibility

determinations.  The ALJ's order sufficiently demonstrates that he properly weighed the evidence

when determining that Plaintiff's complaints were not credible.  *Id.* (upholding the ALJ's

credibility determination because the ruling stated the "specific evidence he relied on in

determining that [the] plaintiff's allegations of disabling pain were not credible").

**B.  Treating Physician Opinions**

Plaintiff next asserts that the ALJ erred by failing to apply the correct legal standard to

assess evidence related to her treating physicians.  Because I conclude that the ALJ's order fails

to demonstrate reliance on the appropriate legal standard, I reverse and remand for further

proceedings.

The treating physician rule dictates that the ALJ must give "controlling" weight to a

treating physician's opinion which reflects a judgment about the nature and severity of the

impairments, including symptoms, diagnosis and prognosis, and any physical or mental

restrictions, if it is:  1) well supported by clinical and laboratory diagnostic techniques; and 2) if it

is not inconsistent with other substantial evidence in the record.   *Bean v. Chater,* 77 F.3d 1210,

1214 (10th Cir. 1995)*; Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290

(10th  Cir. 1995); 20 C.F.R. §404.1527(d).  If the treating physician's opinion is deficient in either

of these respects, then it is not entitled to controlling weight.   *Watkins v. Barnhart,* 350 F.3d

1297, 1300 (10th Cir. 2003).

Even if the opinion is not entitled to controlling weight, however, it is still entitled to

"deference" and, as a result, must be weighed by using factors set forth in 20 C.F.R. §

404.1527(d)(2), including: the length of the treatment relationship;  the nature and extent of the

treatment relationship; the degree to which the opinion is supported by relevant evidence; the

consistency between the opinion and the record as a whole; whether the physician is a specialist;

and other factors which tend to support or contradict the opinion.  *Id.* at 1301.  *See also Langley*

*v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *Robinson v. Barnhart*, 366 F.3d 1078, 1083

(10th Cir. 2004); Social Security Ruling 96-2p.  After these factors are considered, the ALJ must

provide good reasons for the weight he ultimately assigns the opinion.  *Watkins v. Barnhart,*

*supra,* 350 F.3d at 1300.  "A treating physician's opinion may be rejected, but if it is rejected, the

Secretary must give specific, legitimate reasons for his action."  *Reyes v. Bowen,* 845 F.2d 242,

245 (10th Cir. 1988)*; see also Goatcher v. United States Dep't of Health & Human Servs., supra*,

52 F.3d at 290.

Initially, I first conclude that the ALJ failed to properly weigh or even address the opinion

of Dr. Chiodo.  The record indicates that Dr. Chiodo saw Plaintiff on a monthly basis from

February 12, 1998 through September 16, 1998, in his physical medicine rehabilitation outpatient

clinic.  [AR 299, 302, 305, 306, 307, 310, 312, 314, 321]  In July of 1998, Dr. Chiodo wrote a

letter in which he opined that Plaintiff had fibromyalgia, and that she "continues to have

intermittent pain in her back, neck, and cervical spine related to her fibromyalgia." [AR 304] Dr.

Chiodo further opined that Plaintiff:

> has a fluctuating course with regard to her symptoms.  One of her many difficulties
> with regard to work is that she has a poor tolerance of medications to treat
> exacerbations of her fibromyalgia, which happen on a fairly regular basis.  She has
> been able, to a degree, to control these exacerbations of her fibromyalgia with the
> use of stretching and aerobic exercise program. . . . Consideration with regard to
> her disease process is certainly necessary in order to see her through to a
> successful work and life schedule. [AR 304]

The ALJ failed to address Dr. Chiodo's opinions in his written order.  In fact, the order is

devoid of any discussion regarding  Dr. Chiodo, his diagnosis, or the treatment Plaintiff  received

from him.  The Commissioner does not argue that Dr. Chiodo is not a treating physician or an

unacceptable medical source.  *See Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003); 20

C.F.R. § 416.927(d)(2).  Rather, the Commissioner asserts that Dr. Chiodo's progress notes

contain  minimal objective findings and never document the number of trigger points necessary for

an accurate diagnosis of fibromyalgia.   As a result, the Commissioner presumably contends that

there is sufficient evidence in the record to support the ALJ's rejection of Dr. Chiodo's opinion.

However, I cannot assume that the ALJ rejected Dr. Chiodo's opinion when, as here, the ALJ did

not even address the evidence and, in turn, failed to properly outline specific, legitimate reasons

that were "sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reason for that weight."

*Langley v. Barnhart, supra*, 373 F.3d at 1119 (citations omitted).  Furthermore, I note that the

Commissioner's contention that "[in] any event, the ALJ gave Plaintiff the benefit of the doubt

[and] ... found Plaintiff had severe fibromyalgia" appears to be an inaccurate recitation of the

15

ALJ's finding.  As a result, I conclude that the matter must be remanded for the ALJ to make

specific findings related to Dr. Chiodo's treatment of Plaintiff and to make detailed rulings as to

the weight afforded to Dr. Chiodo's opinions by applying the legal standards set forth in *Watkins*

*v. Barnhart, supra,* 350 F.3d at 1300, and  *Langley v. Barnhart*, *supra,* 373 F.3d at 1120.

When weighing the treatment and opinions of Plaintiff's family practitioner, Dr. Heyl, the

ALJ determined that although Dr. Heyl was "unable to find objective evidence to support

Plaintiff's multiple complaints," he nonetheless "made a provisional diagnosis of fibromyalgia" and

found that Plaintiff's functional capabilities evaluation was consistent with his opinion.  The ALJ

noted that Dr. Heyl's referral to a neurologist for a second opinion resulted in a clear rejection of

that diagnosis by Dr. Willner and that  Dr. Heyl did not comment on Dr. Willner's "failure to

confirm his diagnosis of fibromyalgia ." [AR 23]  As to Plaintiff's subsequent family practitioner,

Dr. Johnson, the ALJ found that her diagnosis of left trochanteric bursitis appeared to be made

"solely on the basis of the [Plaintiff's] subjective complaints," [AR 23] and that there was no

evidence, even if the diagnosis was correct, that it persisted or that it required any ongoing

treatment.  [AR 24]  The ALJ next referred to normal cervical and lumbar spine x-rays, as well as

normal MRIs, and Dr. Johnson's notes that indicated Plaintiff was in no acute distress, had good

motor strength in both upper extremities, no muscle wasting of her hands, and no particular nerve

root patterns to her complaints of numbness.  However, "[e]ven so, Dr. Johnson stated that the

[Plaintiff] probably had thoracic outlet syndrome [but] did not explain how the [Plaintiff's] clinical

examination result supported [such] diagnosis."  [AR 24]  The ALJ also found that although the

clinical findings did not support the Plaintiff's complaints,  Dr. Johnson also diagnosed her with

peripheral neuropathy.  [AR 24]  Finally, the ALJ noted that a second opinion and pathology

failed to confirm Dr. Johnson's impression of dermatomyositis. [AR 24]

As a result, the ALJ concluded that the opinions of Plaintiff's family practitioners, Drs. Heyl and Johnson, were not well supported and were inconsistent with other evidence in the record.   Specifically, the ALJ determined that "[t]he evidence overall indicates that the [Plaintiff's] treating family practitioners have made unsubstantiated diagnoses which were provisional, inconsistent with their own clinical examinations, or refuted by specialized diagnostic and clinical testing."   The ALJ found that the doctors failed to explain these inconsistencies or, in Dr. Heyl's case, to provide a reason for his apparent rejection of the neurological specialist's opinion regarding the diagnosis of fibromyalgia.   Furthermore, the doctors expressed no opinion as to Plaintiff's credibility despite their clinical findings that were contrary to her complaints.  [AR 24] As a result, the ALJ concluded that their opinions "are therefore of limited help to me in my assessment of the [Plaintiff's] credibility and her actual residual functional capacity, and they are therefore accorded limited weight."  [AR 24]

Because the ALJ here concluded, with substantial record support, that the opinions of Plaintiff's family practitioners were not well supported and were inconsistent with the other medical evidence, the ALJ did not err when he did not afford those opinions "controlling weight." However, the ALJ's determination of  "limited weight" lacks the analysis necessary for me to ascertain whether he afforded Plaintiff's family practitioner's opinions deference by applying the factors set forth in 20 C.F.R. § 404.1527(d)(2).   As a result, on remand I direct the ALJ to make specific findings related to the weight afforded to Drs. Heyl and Johnson by applying the deference factors as required by *Watkins v. Barnhart, supra,* 350 F.3d at 1300.

Therefore, I conclude that because the written order here fails to reveal that the ALJ applied the appropriate legal standards when applying the treating physicians rule, reversal and remand is appropriate.  *See Goatcher v. U.S. Dept. of Health & Human Servs., supra,* 52 F.3d at 290 (remanding for reconsideration under the appropriate legal standard).

## C. Vocational Expert Testimony

As to Plaintiff's argument that the hypothetical questions propounded to the vocational expert (VE) failed to accurately set forth all her physical and mental limitations, I note that the record reveals that the relevant hypothetical posed to the VE was consistent with the RFC assessment made by the ALJ.  [AR 913]  The limitations Plaintiff maintains were not considered were properly excluded because they were not part of the RFC assessment found by the ALJ. *See Qualls v. Apfel, supra,* 206 F.3d at 1373(finding no error when the ALJ relied upon a hypothetical question to the VA that included all the limitations the ALJ ultimately included in his RFC assessment); *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993)(when the findings regarding a claimant's impairments are adequately reflected in the ALJ's hypothetical inquiries to the VE, the expert's testimony constitutes substantial evidence to support the ALJ's related determination).

## D.  Plaintiff's New Evidence

Finally, I note that to the extent that Plaintiff argues that the SSA Appeals Council erred when it denied Plaintiff's request for review because it failed to consider her new evidence,  the record reveals that the Appeal Council specifically stated that "[i]n looking at your case we considered the reasons you disagree with the decision and the additional evidence listing on the

enclosed Order of Appeal Council," which, in turn, lists the evidence Plaintiff now asserts was not considered.  [AR 13]   Furthermore, Plaintiff does not dispute the Commissioner's assertion that the additional evidence, which is mostly dated after the date Plaintiff's disability insurance status expired, *see* 20 C.F.R. § 404.101(a), provided nothing inconsistent with the ALJ's RFC determination as of that date.   Nonetheless, on remand I direct the ALJ to review and address the applicability of any relevant new medical evidence in this case. *See Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003)(pursuant to 20 C.F.R. 404.970(b), new evidence submitted to the Appeals Council becomes a part of the administrative record to be considered when evaluating the a decision for substantial evidence)(citations omitted).

Accordingly,  IT IS ORDERED that the Commissioner's decision is REVERSED and the cause is REMANDED for further proceedings consistent with the ruling and views set forth in this order.

Dated: February    13    , 2006 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, CHIEF JUDGE

19